IN the INTEREST OF THOMAS J.W., a Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

THOMAS J.W., Respondent-Appellant.

Court of Appeals

*No. 97–0506. Submitted on briefs July 9, 1997.—Decided September 9, 1997.*

(Also reported in 570 N.W.2d 586.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *John H. Wallace III* of *Wallace & Wallace, S.C. of Oshkosh*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Terry Rebholz,* assistant district attorney, Appleton.

Before Cane, P.J., Myse and Hoover, JJ.[1]

CANE, P.J.   Thomas J.W. appeals an order denying his motion to suppress a written admission, alleging a violation of his constitutional right not to incriminate himself. Thomas argues that because of the custodial nature of the interrogation that led to his admission, the police officer should have provided him with the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966). He asserts that because the warnings were not given, his statement should have been excluded from evidence in his CHIPS proceeding. Because a CHIPS proceeding is not a criminal proceeding within the meaning of the Fifth Amendment, we conclude that *Miranda* warnings were not required and that any statements Thomas made are admissible. Therefore, we affirm the trial court's dispositional order.

The pertinent facts are undisputed. A petition was filed on March 15, 1996, alleging Thomas was a child in need of protection or services pursuant to § 48.13(12), STATS.,[2] in that he was a child under the age of twelve who had committed a delinquent act as defined in

---

[1] The court, on its own motion, concluded that this case should be decided by a three-judge panel; the order was issued on August 29, 1997.

[2] Unless otherwise noted, all references to statutes in this opinion are to 1993–94, STATS.

§ 48.12, STATS.,[3] namely, setting a fire in his elementary school.[4]

Thomas moved to suppress his oral and written statements made to a police liaison officer on the grounds that the statements were obtained in violation of his constitutional right not to incriminate himself. An evidentiary hearing was held on Thomas's motion to suppress. The officer testified that on March 8, 1996, he was called to the Freedom Elementary School to investigate a fire that had been set at the school. A teacher told the officer that Thomas had been seen with cigarettes and matches prior to the fire. The officer then questioned Thomas in an office at a high school, where no *Miranda* warnings were given. In response to questioning, Thomas did not make a verbal admission, but he did write the words "I did it" on a piece of paper which he handed to the officer.

---

[3] We recognize that the petition was filed under and the disposition was entered pursuant to sections that have subsequently been repealed. We have examined the statutes in the Juvenile Justice Code, ch. 938, STATS., effective July 1996. New provisions have been created for juveniles alleged or adjudged to be in need of protection or services (JIPS) (§§ 938.13 and 938.345, STATS., 1995–96). These sections essentially parallel the sections involved in Thomas's CHIPS proceeding.

[4] The petition set forth three grounds for determining that Thomas was a child in need of protection or services based on the commission of a delinquent act as defined in § 48.12, STATS. First, that Thomas did, by means of fire, intentionally damage the building of another without the other's consent, contrary to § 943.02(1), STATS.; second, that Thomas did intentionally damage the physical property of another without the owner's consent, contrary to § 943.01, STATS.; and third, that Thomas did engage in otherwise disorderly conduct under circumstances that tended to cause a disturbance, contrary to § 947.01, STATS.

The trial court made findings of fact on the record based on the officer's testimony that Thomas was in custody, was interrogated, and was not advised of his *Miranda* rights. However, the court went on to conclude as a matter of law that *Miranda* did not apply in Thomas's case. The court pointed out that *Miranda* applied in criminal cases, and that Thomas was the subject of a CHIPS petition, which is distinct from a criminal case in that its purpose is to provide services and protection to the child as opposed to punishment. The court also determined that it would be impractical to administer *Miranda* warnings to a person of Thomas's age due to the difficulty of assessing whether he has the capacity to understand the warnings or the ability to knowingly and intelligently waive his rights. Based on those findings of fact and conclusions of law, the trial court admitted Thomas's statements.

■

We review the trial court's findings of fact and conclusions of law using separate standards of review. *State v. Woods*, 117 Wis. 2d 701, 714, 345 N.W.2d 457, 464 (1984). The trial court's findings of evidentiary facts will not be disturbed on appeal unless they are clearly erroneous. Section 805.17(2), STATS. There is no dispute that Thomas was in custody and subject to police interrogation and made statements without first being advised of his rights under *Miranda*. Accepting these findings, we turn next to the central issue on appeal, which is whether it was necessary that *Miranda* warnings be given to Thomas, an eight-and-one-half-year-old child who ultimately became the subject of a CHIPS petition.

■

Whether *Miranda* warnings should have been given is a constitutional question that this court

reviews independently of the trial court's determination. *See Woods,* 117 Wis. 2d at 715, 345 N.W.2d at 465. We look first at the language of the Fifth Amendment to the United States Constitution, and then consider its interpretation in *Miranda,* the subsequent application of *Miranda* in other-than-criminal cases, and the extension of *Miranda* protections to juveniles in delinquency and waiver proceedings. We then consider whether the application of *Miranda* should be extended to CHIPS proceedings.

The Fifth Amendment provides that "[No person] shall be compelled *in any criminal case* to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." (Emphasis added.) Article I, § 8(1), of the Wisconsin Constitution also provides that "[No person] may be compelled *in any criminal case* to be a witness against himself or herself." (Emphasis added.) In *Miranda,* the United States Supreme Court set forth the procedural safeguards to be followed by law enforcement authorities when an individual's Fifth Amendment privilege against self-incrimination is in jeopardy.[5]

> Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a

---

[5] "[W]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Miranda v. Arizona,* 384 U.S. 436, 478 (1966).

> court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479. The *Miranda* Court went on to hold that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.*

The circumstances requiring *Miranda* warnings and the exclusion of evidence obtained in violation of an individual's constitutional rights have been set forth in a long line of cases since *Miranda*. *Miranda* warnings are not required in every circumstance where admissions are made.[6] Furthermore, the lack of *Miranda* warnings during custodial interrogation does not necessarily lead to suppression of statements. Statements that are ultimately detrimental to the speaker have been held admissible even in the absence of *Miranda* warnings. In *Baxter v. Palmigiano*, 425 U.S. 308 (1976), the Supreme Court held that state officials were not in error for failing to advise a prison inmate that he was entitled to counsel at a prison disciplinary hearing. The court stated, "The Court has never held, and we decline to do so now, that the requirements of those cases[7] must be met to render

---

[6] "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478 (footnotes omitted).

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Mathis v. United States*, 391 U.S. 1 (1968) (holding requirements of

pretrial statements admissible in other than criminal cases." *Id.* at 315.

Wisconsin has followed the principle that, while the Fifth Amendment privilege against self-incrimination is a constant in civil and criminal proceedings, the procedural safeguards of *Miranda* warnings are not necessary in certain civil proceedings.[8] The applicability of *Miranda* does not turn solely on whether a proceeding is labeled "civil" or "criminal." Rather, the substance of the proceeding determines its applicability.

Wisconsin has extended the *Miranda* protections to minors in juvenile delinquency proceedings and waiver proceedings. The extension of the application of *Miranda* protections to juveniles in these proceedings was based on the principle that procedural safeguards were necessary because the juveniles were facing exposure to significant imprisonment or confinement in

*Miranda* are not limited to instances where accused is in custody in connection with the very case under investigation).

[8] *See State v. Neitzel*, 95 Wis. 2d 191, 198, 289 N.W.2d 828, 833 (1980) (constitutional rights not violated when driver was not advised of *Miranda* rights nor afforded opportunity to consult with counsel prior to submitting to Breathalyzer test under implied consent law); *Village of Bayside v. Bruner*, 33 Wis. 2d 533, 535, 148 N.W.2d 5, 7 (1967) (prosecution for the violation of a municipal ordinance, in this case drunk driving, has been established as a civil action); *Village of Menomonee Falls v. Kunz*, 126 Wis. 2d 143, 147–48, 376 N.W.2d 359, 361–62 (Ct. App. 1985) (driver prosecuted for driving while under the influence, a civil forfeiture action, did not incriminate himself because he was not criminally prosecuted; *Miranda*'s exclusionary rule is reserved for criminal actions).

detention facilities.[9] Thomas urges this court to follow this line of cases and hold, as a matter of law, that Thomas was entitled to a *Miranda* warning and suppression of his statements for failure to provide the warning. Thomas reasons that there should be no distinction among the procedural safeguards of the rights of children, whether they are the subject of a CHIPS petition or a juvenile delinquency or waiver proceeding. We are not persuaded.

The cases Thomas relies on are distinguishable from his own. First, none of the cited cases deals with a CHIPS proceeding; rather, the cases involve delinquency or waiver petitions based on commission of crimes. The juveniles in those cases were subject to possible imprisonment or detention in secure facilities. Thomas acknowledges the differences between the disposition options of CHIPS and delinquency proceedings but does not address the significance of these differences. He offers no compelling reason for the extension of the procedural safeguards set forth in *Miranda* to a CHIPS situation.

The State asserts that CHIPS petitions are civil in nature, as evidenced by the focus of the code on protec-

---

[9] *See State v. Jones*, 192 Wis. 2d 78, 99, 532 N.W.2d 79, 87 (1995) (ineffective assertion of right to have attorney present; *Miranda* warnings do not need to be reiterated each time defendant interrogated); *Theriault v. State*, 66 Wis. 2d 33, 41, 223 N.W.2d 850, 854 (1974) (totality of the circumstances test is used to evaluate the voluntariness of a confession); *Mikulovsky v. State*, 54 Wis. 2d 699, 719, 196 N.W.2d 748, 758 (1972) (defendant not in custody, *Miranda* not required); *Bradley v. State*, 36 Wis. 2d 345, 352–56, 153 N.W.2d 38, 40–42 (1967) (voluntariness of confession); *Winburn v. State*, 32 Wis. 2d 152, 164, 145 N.W.2d 178, 184 (1966) (insanity defense is available in juvenile delinquency proceeding).

tion and services and the options available to the judge at disposition. We agree that a CHIPS proceeding significantly differs from a criminal proceeding. We have examined the language of the statutes and the record in this case and conclude that the focus of CHIPS proceedings is on providing treatment and services to the child.

Prior Wisconsin cases have considered whether *Miranda* applied in situations where the proceedings had a hybrid of civil and criminal characteristics. The Wisconsin Supreme Court has addressed whether statements made by a parolee to a parole officer are required to be suppressed in a probation revocation hearing for lack of *Miranda* warnings. In *State ex rel. Struzik v. DHSS*, 77 Wis. 2d 216, 221, 252 N.W.2d 660, 662 (1977), the court concluded that the Fifth Amendment exclusionary rule did not apply in the parole revocation context because a revocation hearing is "significantly different from an adversarial criminal proceeding."

Also, in *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), the court upheld the constitutionality of ch. 980, STATS.,[10] finding that ch. 980 is a civil commitment proceeding that has protection of the public and treatment of the offender as its primary purposes, rather than punishment of the offender.[11]

---

[10] Chapter 980, STATS., provides for the involuntary commitment of a person found to be a sexually violent person. We also recognize that § 980.03, STATS., provides rights that are more inclusive than those afforded by statute in ch. 48, STATS.

[11] One issue in *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), was whether ch. 980, STATS., which provides for the involuntary commitment of a person who is determined to be sexually violent, violated the double jeopardy clauses of the Wisconsin and United States Constitutions. Carpenter

The *Carpenter* court looked at the emphasis on treatment that was evident from the face of the statute. The statute required that documentation of prior treatment history be provided to the district attorney and the department of justice. It also provided that a person who is found to be sexually violent is committed to the custody of the DHSS for control, care, and treatment as opposed to the DOC for imprisonment. *Id.* at 266, 541 N.W.2d at 110. The court also considered the mandate to the trial court to consider what arrangements are available to ensure that the person has access to treatment when determining whether the person is committed to a secure mental health facility or to supervised release. Even in the event of an order of supervised release, the county where the person will reside is responsible for providing a treatment plan. *Id.* at 266–67, 541 N.W.2d at 110–11.

Similarly, we conclude that a CHIPS proceeding is significantly different from a criminal proceeding and, therefore, statements made by the subject of the petition are admissible in court even though no *Miranda* warnings were given. The purpose of ch. 48, STATS., and the options available to the judge at disposition indicate that a CHIPS proceeding is civil in nature.

Section 48.01(2), STATS., provides:

> This Chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount

---

argued on appeal that a commitment under ch. 980 would constitute a second punishment for the underlying sexual offense. The Wisconsin Supreme Court disagreed, holding that ch. 980 is a civil proceeding in that its objective is treatment, not punishment. *Id.* at 262–67, 541 N.W.2d at 109–11.

consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

Among the enumerated purposes of § 48.01(1), STATS., are the following:

(b)   To provide for the care, protection and whole-some mental and physical development of children . . . .

(c)   Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation.

These purposes are reflected in § 48.345, STATS., which sets forth the options available to the court at disposition in a CHIPS proceeding. The options are different, and less severe, than those available in a juvenile delinquency proceeding. The judge in a CHIPS petition is prohibited by statute from ordering placement in a secure correctional facility; payment of restitution; payment of a forfeiture; restriction, suspension or revocation of driver's license; participation in a supervised work program; and the imposition of additional sanctions for violations of the order. *See* § 48.345(1), STATS. The statute specifically removes from the judge's purview dispositional options that are punitive in nature. In addition, the dispositional order entered in Thomas's case, which provides for out-of-home placement and twelve conditions aimed at providing counseling and support for Thomas and his parents, effectuates the stated goals of the statute.

The focus on providing protection and services, as well as the absence of punitive measures available to the judge at disposition, make a CHIPS proceeding substantially different from the type of criminal proceeding contemplated by the Fifth Amendment. Therefore, *Miranda* warnings are not required even though an individual is in custody and is the subject of interrogation, and suppression of the statements for failure to provide a warning is not warranted.

*By the Court.*—Order affirmed.